**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**DANIEL BROPHY,**
**an individual,**

**Plaintiff,**

**v.** **Case No.**

**CITY OF CLEWISTON, FLORIDA,**
**a Florida municipality,**

**Defendant.**
**____________________________________/**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DANIEL BROPHY ("Brophy" or "Plaintiff"), by and through the undersigned counsel, does bring this civil action against Defendant, CITY OF CLEWISTON, FLORIDA, (the "City" or "Defendant") and alleges as follows:

## Nature of the Action

This action is brought under Title I and Title II of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.* ("ADA"), the Florida Civil Rights Act of 1992, §760.10 *et seq.* ("FCRA") and the anti-retaliation provision of Florida Worker's Compensation statute, §440.205 *et seq.*, Fla. Stat., to redress Defendant's unlawful employment practices, including Defendant's wrongful and illegally motivated termination of Plaintiff's employment.

## Parties

1. Plaintiff was a resident of Lee County, Florida, at all times relevant to this matter and was formerly employed by Defendant.

2. Defendant is a Florida municipality located in Hendry County, Florida at all times pertinent to Plaintiff's claims.

3. Defendant was Plaintiff's employer within the meaning of the ADA, FCRA and §440.205 *et seq.*, Fla. Stat., at all times relevant to this action.

4. Plaintiff was at all times relevant hereto an eligible employee as defined by the ADA, FCRA and §440.205 *et seq.*, Fla. Stat., at all times relevant to this action.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 & 1345.

6. The Middle District of Florida, Fort Myers Division is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and Division in which Plaintiff resides and in which the events or omissions giving rise to the claims occurred.

7. Plaintiff has performed all conditions precedent necessary to the maintenance of this action, if any, including the filing of a charge of discrimination

with the Equal Employment Opportunity Commission ("EEOC"), receiving a right to sue notice from same and timely filing the present action.

**FACTUAL BACKGROUND**

8. On or about July 8, 2021, Brophy was hired as the Support Services Commander and Second in Command of the Clewiston Police Department. Brophy had a great deal of prior law enforcement leadership experience, including in 2009-2021, serving the Lee County Port Authority command staff as Major/Assistant Chief of Police, Deputy Chief of Police and Interim Chief of Police, as well as running the Railroad Chief of Police position.

9. On or about April 6, 2022, Brophy was injured in the line of duty when he was involved in a motor vehicle accident while driving his unmarked City issued cruiser. Plaintiff sustained serious injuries to his right foot and ankle.

10. On or about May 7, 2024, Brophy learned that he required reconstructive surgery as a result of the foregoing accident.

11. Based upon the above work-related injury Brophy filed a worker's compensation claim and retained an attorney for same.

12. After Brophy had reconstructive surgery, he noticed that his employer, Defendant, began to treat him in a more suspicious, hostile and disparate manner than what he previously had experienced in his work environment.

13. Reflecting the above change in the work environment was a call that was made on or about June 18, 2025 by the City's Clerk, Lakisha Burch, to then police chief, Thomas Lewis. She seemed to mistakenly believe that Brophy was claiming a new accident or incident when reviewing his medical paperwork documenting a doctor's visit, though this was not the case at all. Chief Lewis was taken aback by her accusation and stated to her that he didn't realize he needed to document all of Plaintiff's visit to a doctor pursuant to his ongoing claim. Her response was that Chief Lewis needed to "document everything that comes out of that man's mouth." She implied that Brophy was acting fraudulently with his ongoing medical claim, stating further that she recently fell through a door and suffered injuries requiring stitches but that she was back at work.

14. On or about June 19, 2025, Chief Lewis attended a budget meeting at the city manager's office. The Chief was informed by City Manager Danny Williams that six (6) positions were to be eliminated from the police department.

15. Among some of the positions cited by Williams was that Brophy's position was to be eliminated due to Plaintiff's pending worker's compensation claim. Likewise, the other Commander Tom Levins' position was also being eliminated so that it didn't look obvious that Defendant was targeting Brophy in retaliation for his worker's compensation claim. Lewis asked Williams if any of the

cuts were negotiable if he could find other monetary cuts within the budget, but was told no by the City Manager.

16. On or about July 31, 2025, Chief Lewis presented an alternate proposed police budget to the City Commission which avoided eliminating Brophy's Support Services Commander position, among others. The Chief's proposal was ignored and the City Finance Director, Randy Maxson, stated that he was still proposing the six (6) position cuts, which the City Manager would later adopt.

17. Lewis was subsequently terminated and forced out of his position on or about August 25, 2025 after complaining and objecting to a number of legal violations engaged in by the City and City Manager specifically, including the illegal targeting of Brophy due to his worker's compensation claim.

18. On or about August 26, 2025, Brophy was stripped of his unmarked 2022 police cruiser that he shared with Chief Lewis, and assigned a marked 2014 Dodge Charger.

19. On or about August 28, 2025, Plaintiff was placed on out of work status pending his upcoming surgery, scheduled for September 10, 2025. Brophy notified his staff of his status and that he would return to his position once cleared by his doctor.

20. On or about August 29, 2025, Interim Chief Wilmar "Tico" Salgado told his staff that "I have to let one person go and that person is Dan", referring to Plaintiff. When immeidately asked why Plaintiff, Salgado did not respond.

21. On or about September 8, 2025, Brophy received a text message from Commander Levins stating that they picked up Brophy's vehicle that he had been assigned and returned it to the City. This was disparte treatment as the City did not do this to Sergeant Demetrius Scruggs who had been out on an extended sick leave, instead leaving Scruggs with access to a police cruiser while he was out.

22. Interim Chief Salgado had subsequently told his Administrative Assistant of his intention to fire Brophy, stating further that if he couldn't do so he would demote Brophy to patrol so that his age and physical problems would force him to quit.

23. The Defendant would subsequently post for applications to the Police Chief position, internally and externally. Consistent with its treatment of Brophy thus far, Plaintiff never received an interview despite being told it was to be scheduled and that he was one of only two (2) fully qualified applicants, as well as his having enjoyed seniority.

24. On or about January 12, 2026, Brophy received a letter from Defendant that claimed his position was eliminated and that road patrol was the only available sworn position available to him.

25. The explanation and ultimate termination decision ignored his pending application for the Chief position, the City's acknowledgment and funding of Deputy Chief roles, and its own prior internal and public statements regarding Brophy's termination due to his worker's compensation claim.

26. Likewise, the decision also ignored Brophy's seniority within the department, his substantially greater overall law enforcement experience, and the fact that Levins, who was retained and promoted to Deputy Chief of Police, had significantly less experience both as a law enforcement officer and as a commander.

27. Further reflecting the illegal animus towards Brophy, on or about January 25, 2026, approximately thirteen (13) days after Plaintiff's employment termination, Salgado was promoted from Interim Chief to Chief of Police. Additionally, on January 30, 2026, Jonathan Folbrecht was appointed Commander of the Clewiston Police Department by Chief Salgado.

28. Worth noting is that no ADA interactive process was ever conducted, nor was a reasonable accommodation analysis ever performed, as the decision to terminate his employment was made months earlier when announced as a direct and proximate result of his worker's compensation claim.

29. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

30. As a result of the foregoing, Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel a reasonable attorney's fee.

**COUNT I - WORKERS' COMPENSATION RETALIATION IN VIOLATION OF §440.205, FLORIDA STATUTES**

31. Plaintiff adopts and re-alleges paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiff sought workers' compensation benefits for his injuries sustained within the course and scope of his employment.

33. Defendant sought to terminate Plaintiff for pursuing benefits under Chapter 440.

34. Defendant retaliated against Plaintiff for pursuing benefits, including termination of Plaintiff's employment under false pretenses.

35. Section 440.205, *et seq.* Florida Statutes, provides that employers may not discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the workers' compensation law.

36. Defendant treated Plaintiff in an adverse and hostile manner, including terminating Plaintiff's employment in retaliation for pursuing workers' compensation benefits in violation of §440.205*, et seq.,* Fla. Stat.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

a. Grant a permanent injunction enjoining Defendant from engaging in any

employment practice violative of §440.205*, et seq.,* Fla. Stat.;

b. Declare Defendant's conduct to be in violation of §440.205*, et seq.,* Fla. Stat. and order Defendant to institute policies, practices and programs that provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

c. Grant a judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial and prejudgment interest thereon;

d. Grant Plaintiff his costs (including expert fees); and

e. Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

**COUNT II – DISABILITY DISCRIMINATION**
**IN VIOLATION OF THE FCRA**

37. Plaintiff adopts and re-alleges paragraphs 1 through 30 as if fully set forth herein.

38. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the FCRA in that Plaintiff was capable of performing all essential functions of the position he held with or without a reasonable accommodation.

39. Likewise, at all times relevant to this action, Plaintiff (a) suffered from one or more actual disabilities and/or physical impairments that substantially limited one or more major life activities.

40. Plaintiff suffered from physical impairments as defined by 29 C.F.R. § 1630.2(h) at all times relevant to this action.

41. Plaintiff's physical impairments affected one or major life activities, including, but not limited to, the major life activities of walking, running, yardwork, physical labor, performing certain manual tasks.

42. Finally, Plaintiff was perceived by Defendant as being actually disabled and/or substantially limited in one or more major life activities in that Plaintiff sought an accommodation from Defendant and experienced a physically impairing event at the workplace.

43. Defendant was prohibited under the FCRA from discriminating against Plaintiff because of his disabilities with regard to providing him reasonable accommodations and/or not treating Plaintiff adversely because of his disabilities with regard to other terms, conditions, and privileges of employment.

44. Defendant violated the FCRA by, among other things, treating him in a harassing, hostile and disparate manner, terminating his employment and by otherwise discriminating against him.

45. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

a. Grant a permanent injunction enjoining Defendant from engaging in any employment practice violative of the FCRA;

b. Declare Defendant's conduct to be in violation of the FCRA and order Defendant to institute policies, practices and programs that provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

c. Grant a judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial and prejudgment interest thereon;

d. Grant Plaintiff his costs (including expert fees) and an award of reasonable attorney's fees; and

e. Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

**COUNT III– DISABILITY DISCRIMINATION**
**IN VIOLATION OF THE ADA**

46. Plaintiff adopts and re-alleges paragraphs 1 through 30 as if fully set forth herein.

47. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that Plaintiff was capable of performing all essential functions of the position he held with or without a reasonable accommodation.

48. Likewise, at all times relevant to this action, Plaintiff (a) suffered from one or more actual disabilities and/or physical impairments that substantially limited one or more major life activities.

49. Plaintiff suffered from physical impairments as defined by 29 C.F.R. § 1630.2(h) at all times relevant to this action.

50. Plaintiff's physical impairments affected one or major life activities, including, but not limited to, the major life activities of walking, running, yardwork, physical labor, performing certain manual tasks.

51. Finally, Plaintiff was perceived by Defendant as being actually disabled and/or substantially limited in one or more major life activities in that Plaintiff sought an accommodation from Defendant and experienced a physically impairing event at the workplace.

52. Defendant was prohibited under the ADA from discriminating against Plaintiff because of his disabilities with regard to providing him reasonable accommodations and/or not treating Plaintiff adversely because of his disabilities with regard to other terms, conditions, and privileges of employment.

53. Defendant violated the ADA by, among other things, treating him in a harassing, hostile and disparate manner, terminating his employment and by otherwise discriminating against him.

54. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

a. Grant a permanent injunction enjoining Defendant from engaging in any employment practice violative of the ADA;

b. Declare Defendant's conduct to be in violation of the ADA and order Defendant to institute policies, practices and programs that provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

c. Grant a judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial and prejudgment interest thereon;

d. Grant Plaintiff his costs (including expert fees) and an award of reasonable attorney's fees; and

e. Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all counts so triable.

Dated: September 18, 2026

Respectfully submitted,

**TOBIN LAW GROUP, PLLC**

*/S/ Bradley A. Tobin*
Bradley A. Tobin, Esquire
Florida Bar No. 0101818
Westchase Commons
13043 W. Linebaugh Ave.
Tampa, Florida 33626
Tel: 813.452.6199
Fax: 813.830.7200
Email: btobin@tobinlawgroup.com
*Attorney(s) for Plaintiff.*